# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED ST ATES OF AMERICA | |
| v. | CAUSE NO.: 2:19-CR-126-TLS-JPK-2 |
| OMARR WILLIAMS | |

## AMENDED OPINION AND ORDER[1]

This matter is before the Court on the Defendant's "Motion to reconsider detention hearing/WritofMandamus/HabeausCorpus" [ECF No. 24], filed pro se on November 4, 2019. The Court is construing this as a Motion for Review of Detention pursuant to 18 U.S.C. § 3145(b). For the reasons stated below, the Defendant's Motion is DENIED.

## BACKGROUND

On October 9, 2019, FBI Special Agent Andrew Chonowski filed a criminal complaint [ECF No. 1] against Defendant Omarr Williams. The Agent alleged that the Defendant and a co-conspirator committed three bank robberies in violation of 18 U.S.C. § 2113(a). Aff. in Supp. of App. for a Compl., ¶ 3, ECF No. 1. The first alleged robbery occurred on September 5, 2019, at the U.S. Federal Credit Union in Gary, Indiana. *Id.* ¶ 4. The Agent alleged that two unidentified male subjects, both of whom were African American and dressed as construction workers, entered the credit union. *Id.* ¶¶ 4, 8. The first suspect displayed a black handgun to the bank teller and proclaimed that "[t]his is a robbery." *Id.* ¶ 5. The second suspect tugged at something in his shirt, which the bank teller believed was a weapon. *Id.* ¶ 6. Ultimately, the suspects stole

---

[1] The Opinion and Order [ECF No. 31] originally issued on November 19, 2019, is amended solely to update the citations to the probable cause and detention hearing. *See* Transcript of Probable Cause and Detention Hearing, ECF No. 34.

$7,541.00 from the credit union. *Id.* ¶¶ 7, 9. The bank tellers observed the suspects leave the bank in a silver KIA minivan. *Id.* ¶ 8.

The second alleged robbery occurred on September 23, 2019, at the Horizon Bank in Hammond, Indiana. *Id.* ¶ 12. The first suspect was wearing a Halloween mask, while the other suspect was dressed as a construction worker. *Id.* The second suspect pulled out a silver revolver and pointed it as the bank teller. *Id.* ¶ 14. The suspects took $12,541.00 from the bank and fled the scene on bicycles. *Id.* ¶¶ 16–17.

The third alleged robbery occurred on October 8, 2019, at the First Financial Bank in Hammond, Indiana. *Id.* ¶ 20. The first suspect wore a Golden State Warriors hat and dark sunglasses. *Id.* The second suspect wore a beige hat, a long sleeve shirt, and dark sunglasses. *Id.* The first suspect pointed a black firearm at the bank teller and told her to "[o]pen the drawers and give me everything inside, and if you activate the panic alarm I'll shoot you." *Id.* ¶ 21. The suspects took $4,804.00 from the bank. *Id.* ¶ 23. However, the bank tellers placed a GPS tracking device with the stolen money. *Id.* ¶ 26. The suspects fled the scene of the crime in a black minivan. *Id.* ¶ 22. Police officers followed the GPS device to the 500 block of Burr Street in Gary, Indiana. *Id.* ¶ 27. A black KIA minivan was located at 540 Burr Street, and officers observed a black male hiding in the tree line of the wooded area immediately north of 540 Burr Street. *Id.* ¶¶ 27–28. This individual was identified as Anthony H. Day, who is a codefendant in this case. *Id.* ¶ 28. Witnesses observed a second black male exiting this area on foot. *Id.* ¶ 29. Ultimately, the Lake County Sheriff's Department apprehended this suspect approximately two blocks away from the black KIA minivan. *Id.* The suspect, who was later identified as Defendant Omarr Williams, was armed with a black handgun and possessed a handbag containing $1,597.00 in currency. *Id.* Following their arrest, investigators discovered that the KIA minivan

was spray-painted black, but that its original color was silver. *Id.* ¶ 30. Investigators searched the area adjacent to the KIA minivan and found a silver revolver, an automatic rifle, black rubber gloves, pieces of the GPS tracker, a blue bag containing $3,146 in currency, and clothing which was consistent with what the suspects wore in the third alleged robbery. *Id.* ¶¶ 31–32.

On the morning of October 11, 2019, a probation officer issued a Pretrial Services Report [ECF No. 7] for the Defendant. The probation officer concluded that "it is unknown if there are a combination of conditions that will reasonably assure the appearance of the defendant . . . and the safety of the community. Therefore, I respectfully recommend the defendant be detained at this time." *Id.* at 7. The probation officer highlighted the Defendant's significant criminal history which included an October 2017 conviction for armed robbery. *See id.* at 2–6. The probation officer also indicated that the Defendant was currently on probation, but that a petition to revoke his probation was currently pending. *Id.* at 5. Moreover, the probation officer noted that the Defendant had missed several court dates which necessitated the issuance of a bench warrant for his arrest. *See id.* at 5–6. The probation officer also noted the Defendant's use of aliases. *Id.* at 6.

On the afternoon of October 11, 2019, Magistrate Judge Joshua P. Kolar conducted a probable cause and detention hearing. *See* Probable Cause and Detention Hearing, ECF No. 8. At the hearing, the Defendant stated he was a Moorish national who was not bound by the laws or Constitution of the United States of America. Hr'g Tr., p. 12, Oct. 11, 2019, ECF No. 34. Ultimately, Judge Kolar found that the Complaint was supported by probable cause, *id.* at 18, and the Government moved to detain the Defendant without bond, *id.* at 26. The Defendant argued that "[n]o victim ever said I did anything. That is my assurance. No victim said I did anything. We here on [an] assumption." *Id.* at 27. The prosecutor argued that "the Defendant has a substantial criminal history. He has failed—he's currently on probation, has a warrant out for

his arrest because he failed to appear. He failed to comply with the rules of probation . . . ." *Id.* at 28. The prosecutor further argued as follows:

> I don't think that there's any combination of—of anything that would ensure his appearance in court and ensure that he's not a danger to the community. His criminal history is extensive. His failures to appear and flight is extensive, his use of aliases. He's indicated to the Court numerous times that he doesn't believe himself bound by the law or the Constitution of the United States of America.

*Id.* at 29. Based upon this, Judge Kolar ordered that the Defendant be detained awaiting trial. *Id.* at 32. On October 16, 2019, Judge Kolar issued an Amended Order of Detention [ECF No. 10] which found that there were no conditions or combinations of conditions that would reasonably assure the Defendant's continued appearance and the safety of the community.

## ANALYSIS

The Defendant argues that the Court should reverse Judge Kolar's detention order. For the reasons stated below, the Defendant's request is DENIED.

"The judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(f). When determining if there are conditions of release that will reasonably assure the appearance of the person and the safety of the community, courts consider the following factors: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). "If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer

shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). "The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B); *United States v. Salerno*, 481 U.S. 739, 751 (1987).

However, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed a crime of violence. 18 U.S.C. § 3142(e)(3)(B). The Seventh Circuit has concluded that bank robbery *per se* is a crime of violence. *United States v. Armour*, 840 F.3d 904, 907 (7th Cir. 2016) (quoting 18 U.S.C. § 924(c)(3)(A)); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991). The applicable presumption is rebutted "when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). "Once this burden of production is met, . . . the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (citing *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)); *see also United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985) ("For although the presumption against bail is rebuttable, . . . it continues to weigh in the balance against bail even after the defendant meets his burden of producing some evidence to rebut the presumption."). "The burden of persuasion remains with the government once the burden of production is met." *Dominguez*, 783 F.2d at 707.

"Section 3145(b) provides for district court review of a magistrate's release or detention order. When reviewing a magistrate's determination, a district court must conduct a *de novo* review and need not defer to the magistrate's findings." *United States v. Levine*, 770 F. Supp. 460, 465 (N.D. Ind. 1991) (citing *States v. Shaker*, 665 F. Supp. 698, 701 (N.D. Ind. 1987)); *see United States v. Portes*, 786 F.2d 758, 762 (7th Cir. 1985). The district court may affirm an order of detention based upon the record presented to the magistrate judge. *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991); *see United States v. Hammond*, 204 F. Supp. 2d 1157, 1162 (E.D. Wis. 2002).

In this case, the Defendant is alleged to have committed three bank robberies. Aff. in Supp. of App. for a Compl., ¶ 4, ECF No. 1. Regarding the third bank robbery, two unidentified suspects entered the First Financial Bank in Hammond, Indiana. *Id.* ¶ 20. The first suspect pointed a black firearm at the bank teller and told her to "[o]pen the drawers and give me everything inside, and if you activate the panic alarm I'll shoot you." *Id.* ¶ 21. The suspects took $4,804.00 from the bank, but the bank tellers placed a GPS tracking device with the stolen money. *Id.* ¶¶ 23, 26. The suspects fled the scene in a black minivan, but the police followed the GPS device to the 500 block of Burr Street in Gary, Indiana. *Id.* ¶¶ 22, 27. A black KIA minivan was located at 540 Burr Street, and officers arrested a black male hiding in the tree line of the wooded area immediately north of 540 Burr Street. *Id.* ¶¶ 27–28. Witnesses observed a second black male exiting this area on foot, and the Lake County Sheriff's Department apprehended him approximately two blocks away from the black KIA minivan. *Id.* The suspect, who was later identified as Defendant Williams, was armed with a black handgun and possessed a handbag containing $1,597.00 in currency. *Id.* Following these arrests, investigators discovered that the black KIA minivan was spray-painted black, but that its original color was consistent with the

color of the KIA minivan used in the first alleged robbery. *Id.* ¶ 30. Investigators searched the area adjacent to the KIA minivan and found a silver revolver, an automatic rifle, black rubber gloves, pieces of the GPS tracker, a blue bag containing $3,146 in currency, and clothing which was consistent with what the suspects wore in the third alleged robbery. *Id.* ¶¶ 31–32.

Based upon this, the Court finds there is probable cause to believe that the Defendant committed a crime of violence. 18 U.S.C. § 3142(e)(3)(B); *Jones*, 932 F.2d at 625; *see also United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (recognizing that a finding of probable cause does not require evidence sufficient to demonstrate that it is more likely than not that the suspect committed a crime). Because there is probable cause to believe the Defendant committed a crime of violence, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. 18 U.S.C. § 3142(e)(3)(B).

Next, under a very generous view of the record, the Court concludes that the Defendant has come forward with "some evidence" that he will not flee or endanger the community if released. *Dominguez*, 783 F.2d at 707. At the initial detention hearing, although he did not present any formal evidence, the Defendant argued that "[n]o victim ever said I did anything. That is my assurance. No victim said I did anything. We here on [an] assumption." The Defendant did not present any evidence regarding why he was not a danger to the community or how his appearance could be reasonably assured for future proceedings. However, in the instant Motion for Review of Detention, the Defendant states as follows:

> I, Omar R. Williams would like the court to reconcider the detention hearing and that I be released on my own recognizance based on the following facts; 1)I dont owe a duty to perform, a duty to pay any opposing 3rd party, I have a family, children & grandchildren that depend on me. 2) Nobody from my community said I was a threat, 3) Its my official guarantee I am not a flight risk & Im exercising my right to remedy.

Motion to Reconsider Detention, p. 1, ECF No. 24. The Court construes the Defendant's statements as "some evidence" that he will not flee or threaten the community due to the fact that he must support his family. *See generally Diaz*, 777 F.2d at 1238 (noting that family ties may prevent a defendant from fleeing the jurisdiction).

Finally, the Court ultimately concludes that the Government has proven by clear and convincing evidence that no condition of release will reasonably assure the Defendant's appearance or ensure the safety of the community. As noted above, "[o]nce this burden of production is met, . . . the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Dominguez*, 783 F.2d at 707. 18 U.S.C. § 3142(g) provides the following factors for the Court to consider: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including whether the person was on parole at the time of the alleged offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The first factor weighs heavily against the Defendant because he is alleged to have robbed three banks and pointed a firearm at a bank teller. 18 U.S.C. § 3142(g)(1). Turning to the second factor, for the reasons stated at length above, the evidence against the Defendant is very strong. 18 U.S.C § 3142(g)(2). Regarding the third factor, the Defendant repeatedly stated during the detention hearing that he is a Moorish national and that the laws and the Constitution of the United States do not apply to him. 18 U.S.C. § 3142(g)(3). Taken at face value, this is a strong indication that the Defendant may not comply with the directives of the Court or the directives of Probation and Pretrial Services Officers. Moreover, as indicated by the Pretrial Services Report,

the Defendant was currently on probation when the alleged crime occurred. Pretrial Services Report, pp. 2–6. The Defendant also has a significant criminal history and a tendency of missing court proceedings. *Id.* at 5–6. Turning to the final factor, as indicated above, the Defendant is alleged to have pointed a gun at a bank teller—which is strong evidence that the Defendant's release could seriously endanger the community. 18 U.S.C. § 3142(g)(4).

Based upon these facts, the Court finds that (1) the nature and circumstances of the offense charged weigh strongly against pretrial release; (2) the weight of the evidence against the Defendant is very strong; (3) the history and characteristics of the Defendant weigh strongly against release; and (4) the Defendant's release would be dangerous to the community. 18 U.S.C. § 3142(g). Moreover, based upon the record in this case, the Court finds that the Defendant is not credible. Accordingly, the Government has proven by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance or ensure the safety of the community. Therefore, Judge Kolar's well-reasoned order is affirmed.

## CONCLUSION

For the reasons stated above, the Defendant's Motion for Review of Detention [ECF No. 24] is DENIED. Judge Kolar's Amended Order of Detention [ECF No. 10] is AFFIRMED.

SO ORDERED on December 11, 2019.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT