# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CAUSE NO.: 2:19-CR-126-2-TLS-JPK |
| OMARR WILLIAMS | |

## OPINION AND ORDER

This matter is before the Court on the various Motions to Dismiss [ECF Nos. 21, 35, 36] which were filed by Defendant Omarr Williams. For the reasons stated below, the Defendant's Motions are DENIED. However, regarding the issue of whether he was subjected to an illegal search and seizure, the Defendant has leave of court to file a Motion to Suppress.

## BACKGROUND

On October 9, 2019, FBI Special Agent Andrew Chonowski filed a Criminal Complaint [ECF No. 1] against Defendant Omarr Williams. The Agent alleged that the Defendant and a co-conspirator committed three bank robberies in violation of 18 U.S.C. § 2113(a). Aff. in Supp. of Appl. for Compl. ¶ 3, ECF No. 1. The first alleged robbery occurred on September 5, 2019, at the U.S. Federal Credit Union in Gary, Indiana. *Id.* ¶ 4. The Agent alleged that two unidentified male subjects, both of whom were African American and dressed as construction workers, robbed the credit union at gun point. *Id.* ¶¶ 4, 8. The suspects stole $7,541.00 from the credit union. *Id.* ¶¶ 7, 9. The bank tellers observed the suspects leave the bank in a silver KIA minivan. *Id.* ¶ 8.

The second alleged robbery occurred on September 23, 2019, at the Horizon Bank in Hammond, Indiana. *Id.* ¶ 12. The first unidentified suspect was wearing a Halloween mask, while the other suspect was dressed as a construction worker. *Id.* The second unidentified suspect

pulled out a silver revolver and pointed it at the bank teller. *Id.* ¶ 14. The suspects took $12,541.00 from the bank and fled the scene on bicycles. *Id.* ¶¶ 16–17.

The third alleged robbery occurred on October 8, 2019, at the First Financial Bank in Hammond, Indiana. *Id.* ¶ 20. The first unidentified suspect wore a Golden State Warriors hat and dark sunglasses. *Id.* The second unidentified suspect wore a beige hat, a long sleeve shirt, and dark sunglasses. *Id.* The first suspect pointed a black firearm at the bank teller and told her to "[o]pen the drawers and give me everything inside, and if you activate the panic alarm I'll shoot you." *Id.* ¶ 21. The suspects took $4,804.00 from the bank. *Id.* ¶ 23. However, the bank tellers placed a GPS tracking device with the stolen money. *Id.* ¶ 26. The suspects fled the scene of the crime in a black minivan. *Id.* ¶ 22. Police officers followed the GPS device to the 500 block of Burr Street in Gary, Indiana. *Id.* ¶ 27. The officers located a black KIA minivan matching the description of the suspect vehicle at 540 Burr Street and observed a black male hiding in the tree line of the wooded area immediately north of 540 Burr Street. *Id.* ¶¶ 27–28. This individual was identified as Anthony H. Day, who is a codefendant in this case. *Id.* ¶ 28.

Witnesses observed a second black male exiting the wooded area on foot. *Id.* ¶ 29. Apparently, the suspect asked a female for a ride, but she refused. *Id.* Ultimately, the Lake County Sheriff's Department apprehended this suspect approximately two blocks away from the black KIA minivan. *Id.* The suspect, who was later identified as Defendant Omarr Williams, was armed with a black handgun and possessed a handbag containing $1,597.00 in currency. *Id.* Following their arrest, investigators discovered that the KIA minivan was spray-painted black, but that its original color was silver. *Id.* ¶ 30. Investigators searched the area adjacent to the KIA minivan and found a silver revolver, an automatic rifle, black rubber gloves, pieces of the GPS tracker, and a blue bag containing $3,146 in currency. *Id.* ¶¶ 31–32.

On October 11, 2019, Magistrate Judge Joshua P. Kolar conducted a probable cause and detention hearing in regard to Defendant Williams. *See* Probable Cause and Detention Hearing, ECF No. 8. At the hearing, the Defendant stated he was a "Moorish national" who was not bound by the laws of the United States of America. *See* Hr'g Tr., p. 3, ECF No. 34. Ultimately, Judge Kolar found that the Complaint was supported by probable cause and ordered that the Defendant be detained awaiting trial. *Id.* at 17, 31–33; *see* Am. Order of Detention, ECF No. 10.

On October 17, 2019, the Grand Jury indicted the Defendant for bank robbery (Count 1), use of a firearm during and in relation to a crime of violence (Count 2), and being a felon in possession of a firearm (Count 4). *See* Indictment, ECF No. 11; 18 U.S.C. §§ 922(g)(1), 924(c)(A)(i)–(ii), 2113(a).

## ANALYSIS

Following his detainment, the Defendant filed various pro se motions which raise numerous arguments. In essence, the Defendant argues that (1) the United States of America and this Court are without jurisdiction because he is a Moorish national; (2) this matter is being tried in an improper venue; (3) the pending criminal charges should be dismissed for insufficient evidence; (4) the officers lacked probable cause to place him under arrest; (5) his constitutional rights were violated because he was not read his *Miranda* rights; (6) the indictment is defective; (7) the Government committed prosecutorial misconduct by failing to comply with Federal Rule of Criminal Procedure 16; and (8) he should be permitted to terminate his standby counsel. For the reasons stated below, the Defendant's arguments are denied. However, the Defendant's argument regarding an illegal search and seizure is denied without prejudice.

A.  **Jurisdiction and Standing**

The Defendant argues that the United States of America does not have standing "to file suit on behalf of someone else because they didn't suffer direct injury or property damage as a result of the defendants [*sic*] actions." Mot. to Dismiss ¶ 17, ECF No. 21. Further, based upon his citation to Federal Rule of Criminal Procedure 12(b)(2) within the opening paragraph of his Motion to Dismiss [ECF No. 21], the Defendant apparently believes that this Court is also without jurisdiction. The Defendant also argues that he is not subject to the laws of the United States because he is a Moorish national. *Id.* ¶ 20. As demonstrated below, the Seventh Circuit has already concluded that such arguments are without merit:

> Borlea argues that the federal courts lack subject matter jurisdiction over him and that the laws he is charged with violating are inapplicable to him because he is a Native Asiatic Moorish National Citizen. This argument is frivolous. The district court has original jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231. Borlea was charged with committing several offenses against the laws of the United States. We have rejected a similar challenge to the district court's jurisdiction by a defendant asserting that he was a Moorish national and therefore need obey only those laws mentioned in an ancient treaty between the United States and Morocco. *United States v. James*, 328 F.3d 953 (7th Cir.2003). As stated in *James*: "Laws of the United States apply to all persons within its borders. Even if James were not a citizen of the United States . . . he would be obliged to respect the laws of this nation." *Id.* at 954.

*United States v. Toader*, 409 F. App'x 9, 12–13 (7th Cir. 2010). Therefore, the Court concludes that the Defendant's above-mentioned arguments are without merit. *See James*, 328 F.3d at 954.

B.  **Venue**

The Defendant argues that his case is being tried in an improper venue. "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. The alleged crimes occurred in the cities of

4

Hammond and Gary, Indiana. Both cities are located within the United States District Court for the Northern District of Indiana. As such, venue is proper.

**C.     Insufficient Evidence**

The Defendant argues that his pending criminal charges should be dismissed due to insufficient evidence. However, the grand jury indicted the Defendant with multiple criminal charges. *See* Indictment, ECF No. 11. "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014). "An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363 (1956); *see also* Andrew D. Leipold, 1 Fed. Prac. & Proc. Crim. § 112 (4th ed. 2019). As such, this argument is without merit.

**D.     Illegal Search and Seizure**

The Defendant argues that "[t]here was no probable cause to stop me" and that he was subject to "an illegal search and seizure of my persons and property." Mot. to Dismiss ¶¶ 12, 16, ECF No. 21. Because the Defendant has cited to Federal Rule of Criminal Procedure 12(b)(3)(C) within his Motion to Dismiss, the Court will presume that the Defendant is arguing that the evidence obtained as a result of his arrest should be suppressed. However, the Defendant does not offer further explanation or analysis. As such, the Court denies this argument without prejudice. The Defendant has leave of court to file a Motion to Suppress to fully address this issue.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v.*

5

*Scheets*, 188 F.3d 829, 836 (7th Cir. 1999) (quoting U.S. Const. amend. IV). Courts recognize three basic categories of police-citizen interactions when determining whether a defendant was seized within the meaning of the Fourth Amendment:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment.

*United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015) (quoting *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir. 1990)).

The Fourth Amendment also prohibits, with limited exceptions, warrantless searches. *Gibbs v. Lomas*, 755 F.3d 529, 542 (7th Cir. 2014) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Gant*, 556 U.S. at 338 (citing *Weeks v. United States*, 232 U.S. 383, 392 (1914)). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir.2012); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also United States v. Bullock*, 632 F.3d 1004, 1022 (7th Cir. 2011). Under the search-incident-to-arrest exception, police officers may search a vehicle incident to a recent occupant's arrest if (1) the arrestee is within reaching distance of the vehicle during the search or (2) the police have reason to believe that the vehicle contains evidence relevant to the crime of

arrest. *Gibbs*, 755 F.3d at 542 (quoting *Davis v. United States*, 564 U.S. 229, 235 (2011)); *see also United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010).

"It is well established that '[e]videntiary hearings are not required as a matter of course.'" *United States v. Schreiber*, 866 F.3d 776, 781 (7th Cir. 2017) (quoting *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007)). Instead, district courts are required to conduct an evidentiary hearing "only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011); *see also McGaughy*, 485 F.3d at 969.

In this case, during the third alleged robbery, two African Americans robbed a bank in Hammond, Indiana. *See* Aff. in Supp. of Appl. for a Compl. ¶ 20, ECF No. 1. The suspects took $4,804.00 from the bank, but the bank tellers placed a GPS tracking device with the stolen money. *Id.* ¶¶ 23, 26. The suspects fled the scene in a black minivan. *Id.* ¶¶ 22. The police followed the GPS tracker which was placed with the stolen money and arrived at the 500 block of Burr Street in Gary, Indiana. *Id.* ¶ 26. The police discovered a black KIA minivan located in an alley west of 540 Burr Street which matched the description of the suspect vehicle. *Id.* ¶ 27. Officers observed a black male hiding in the wooded area north of 540 Burr Street, and he was later arrested and identified as Co-Defendant Anthony Day. *Id.* ¶ 28. "Witnesses observed a [second] black male exiting the wooded area. Law enforcement radio communication indicated he asked a female for a ride but she refused. He left the area on foot and was apprehended approximately two blocks away." *Id.* ¶ 29. Following the arrest, this second suspect was identified as the Defendant. *Id.*

However, the Defendant asserts that no "victim or police (law enforcement) see me near a car, nor Mr. Anthony Day, or the wooded area tree line. Review the dash camera, body camera,

7

etc." Mot. to Dismiss ¶ 11, ECF No. 21. He further asserts that Agent Chonowski "lied and said I exited the wooded area with no proof from any law enforcement agency, never saw me drive a vehicle, nor was I near Mr. Anthony Day. I am not [unidentified suspect] 1 or 2." *Id.* ¶ 13. Based upon this, the Defendant argues "[t]here was no probable cause to stop me" and that he was subjected to "an illegal search and seizure of my persons and property." *Id.* ¶¶ 12, 16.

The Court finds that the information contained within Agent Chonowski's affidavit is insufficient to determine whether the Defendant's arrest was lawful.[1] Specifically, the affidavit states that the Lake County Sherriff's Department Defendant "apprehended" the suspect "approximately two blocks away" from the black minivan. Aff. in Supp. of Appl. for a Compl. ¶ 29, ECF No. 1. However, the affidavit does not provide enough context of the events leading up to the Defendant's arrest. For example, the affidavit does not indicate whether the Defendant matched the description of a suspect who robbed the bank. The affidavit does not indicate whether the witnesses who allegedly observed the suspect leaving the vicinity of the black minivan gave a description of the suspect to the police, let alone whether the Defendant matched that description. The affidavit is silent on whether law enforcement observed the Defendant leave the vicinity of the black minivan. *See also* Hr'g Tr., p. 16, ECF No. 34. The affidavit does not indicate whether the Defendant was acting suspiciously prior to his arrest. The affidavit does not indicate whether the firearm or the bag of money were openly visible to the arresting officers or whether this evidence was found as a result of a "Terry pat down" or a search incident to arrest. The affidavit is also silent on whether the police officers simply placed the Defendant under

---

[1] The Court emphasizes that it is perfectly understandable that the affidavit does not establish probable cause for an arrest. Namely, Agent Chonowski did not write this affidavit for the purpose of establishing probable cause for an arrest; instead, he wrote the affidavit for the purpose of establishing probable cause that the Defendant committed the crime of bank robbery and other federal offenses. This distinction perhaps explains why the facts leading up to the arrest are not fully developed. Also, Agent Chonowski was not the arresting officer.

8

arrest upon encountering him or whether they began with an investigatory stop or a voluntary police-citizen encounter. Furthermore, although the affidavit states that the Defendant was arrested within two blocks of the black minivan, the affidavit is silent as to when the Defendant was arrested.

However, the Defendant merely argues that "[t]here was no probable cause to stop me" and that he was subject to "an illegal search and seizure of my persons and property." Mot. to Dismiss ¶¶ 12, 16, ECF No. 21. The Defendant does not offer further context or analysis. Based upon his failure to fully address this issue, the Defendant's argument regarding an alleged illegal search and seizure is denied without prejudice. *See United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) (noting that the parties, rather than the court, must research and construct available legal arguments). The Defendant may file a Motion to Suppress to fully address this issue.

**E.     Waived Arguments**

The Defendant also argues he was "forced into captivity . . . [and] hospitalized without any Miranda warning rights read. Due process was violated from the beginning." Mot. to Dismiss ¶ 16, ECF No. 21.[2] *Id.* ¶ 12. However, the Defendant does not provide any further context or analysis in support of this argument. Moreover, the Defendant does not identify any statement or evidence that he seeks to suppress. "The parties—not the courts—must research and construct available legal arguments." *Collins*, 796 F.3d at 836 (citing *Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 987 (7th Cir.2014)). Moreover, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent

---

[2] The Court is uncertain whether the Defendant mistakenly used the word "hospitalized" or whether he is referring to his competency evaluation. *See* ECF No. 62. Regardless, for the reasons stated below, this argument is waived for the purposes of his Motion to Dismiss.

9

authority, are waived (even where those arguments raise constitutional issues)." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Accordingly, the Court concludes that the Defendant's *Miranda* argument within his Motion to Dismiss is waived.

Likewise, within the opening paragraph of his Motion to Dismiss [ECF No. 21], the Defendant cites to Federal Rule of Criminal Procedure 12(b)(3)(B)(iii). This Rule provides that, so long as the basis or the motion is reasonably available and can be determined without a trial on the merits, the Defendant must raise any defect in the indictment prior to trial. Fed. R. Crim. P. 12(b)(B)(3). However, notwithstanding his citation to Rule 12(b)(3)(B)(iii), the Defendant offers no context or analysis regarding the indictment's alleged defectiveness. As such, this argument is waived. *Collins*, 796 F.3d at 836.

F.   **Prosecutorial Misconduct**

The Defendant argues that prosecutorial misconduct has occurred because the Government has not complied with Federal Rule of Criminal Procedure 16. *See* Mot. to Dismiss, ECF No. 36. "No later than 14 days after the arraignment, the attorney for the government and the defendant's attorney must confer and try to agree on a timetable and procedures for pretrial disclosure under Rule 16." Fed. R. Crim. P. 16.1(a). The Government states that it is reformatting the evidence in its possession so that the Defendant may view it at the Chicago Metropolitan Correction Center. *See* Govt's Resp. ¶¶ 2–3, ECF No. 37. Based upon this, the Defendant fails to demonstrate that any sort of discovery violation—let alone prosecutorial misconduct—has occurred at this time. *See United States v. Salerno*, 108 F.3d 730, 742 (7th Cir. 1997) ("Determinations regarding Federal Rule of Criminal Procedure 16 are 'committed to the sound discretion of the district court, and we will reverse only for abuse of discretion prejudicial

to the substantial rights of the defendant.'" (quoting *United States v. D'Antoni*, 856 F.2d 975, 984 (7th Cir. 1988)).

G.  **Standby Counsel**

The Defendant asserts he is "officially terminating the service of standby counsel . . . and I'm not asking permission." Mot. to Dismiss ¶ 22, ECF No. 21. However, the Court may appoint standby counsel even if the defendant objects. *United States v. Ortega-Cervantes*, 731 F. App'x 527, 528 (7th Cir. 2018) (citing *Faretta v. California*, 422 U.S. 806, 835 n. 46 (1975)). As such, the Defendant cannot "terminate" the services of his standby counsel.[3]

**CONCLUSION**

For the reasons stated above, the Defendant's Motions to Dismiss [ECF Nos. 21, 35, 36] are DENIED. However, the Defendant's argument regarding an illegal search and seizure is denied without prejudice. The Defendant has leave of court to file a Motion to Suppress regarding this issue. Any such Motion to Suppress must be filed on or before May 18, 2020. The Government has until June 8, 2020 to file a Response to the Motion to Suppress. The Defendant will have until July 1, 2020 to file a Reply in support of his Motion to Suppress. In light of the COVID-19 pandemic, both the Defendant and the Government may seek extensions of time for good cause shown. Thereafter, the Court will consider whether an evidentiary hearing is required.

---

[3] The Court takes this opportunity to encourage the Defendant to listen to the advice of his standby counsel. Moreover, the Court strongly encourages the Defendant to reconsider his decision to proceed pro se. You have the right to an attorney, and one will be provided for you if you cannot afford one. An attorney has specialized knowledge in the law—such as the rules of evidence, criminal procedure, constitutional law, trial advocacy, etc.— which you do not presumably possess. Please contact the Court if you reconsider your decision to proceed pro se or if you have further questions regarding your right to an attorney.

SO ORDERED on April 6, 2020.

                                            s/ Theresa L. Springmann
                                            CHIEF JUDGE THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT